UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                                                                   :
JASON NEAL,                                                        :
                                                                   :
                          Petitioner,                              :
                                                                   :
                                                                   :
               -v-                                                 :        08-cr-0086 (KBF)
                                                                   :        15-cv-7665 (KBF)
                                                                   :
UNITED STATES OF AMERICA,                                          :
                                                                   :        OPINION & ORDER
                          Respondent.                              :
------------------------------------------------------------------ X

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: May 23, 2016 |

KATHERINE B. FORREST, District Judge:

      The Court has reviewed petitioner Jason Neal's motion, pro se, to vacate, set

aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on grounds of ineffective

assistance of counsel.  (Pet., 08-cr-0086, ECF No. 42; 15-cv-7665, ECF No. 1.)[1]  Neal

was convicted at a jury trial on October 24, 2008, of all three charges against him in

his Superseding Indictment.  Neal was convicted of (1) conspiracy to distribute, and

possession with intent to distribute, more than five kilograms of cocaine, in

violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, (2) distribution, and

possession with intent to distribute, less than 50 kilograms of marijuana, in

violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(D) and 18 U.S.C. § 2, and (3)

possession of a firearm during and in relation to, and in furtherance of, a narcotics

trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

      On May 10, 2011, Neal was sentenced by Judge Miriam Goldman Cedarbaum

principally to a term of 180 months' imprisonment, the mandatory minimum

---

[1] Unless otherwise noted, all citations to ECF in this Opinion & Order refer to the docket in case no. 08-cr-0086.

sentence applicable to the crimes of conviction.  (ECF No. 35.)  After Neal's counsel moved to withdraw, Neal subsequently appealed his conviction through newly appointed counsel, who submitted a brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967).  On July 8, 2014, the Second Circuit granted counsel's motion to withdraw and granted the Government's motion for summary affirmance of Neal's conviction.  (ECF No. 39.)  On September 24, 2015, Neal filed the instant petition pursuant to 28 U.S.C. § 2255.  (ECF No. 42.)

Neal now argues that he received ineffective assistance of counsel from both his trial counsel and appellate counsel.  Neal contends that his trial counsel was ineffective for failure to, <u>inter alia</u>: (1) investigate fully certain telephone records, (2) present evidence to the jury that he was a marijuana dealer and not a cocaine dealer, (3) cast doubt on the credibility of the Government's cooperating witnesses, and (4) argue effectively that the amount of cocaine involved in the conspiracy was less than five kilograms.  (Pet'r's Mem. of Law at 6-13, ECF No. 1.)  Neal contends that his appellate counsel provided ineffective assistance for failing to challenge the sufficiency of the evidence of Neal's involvement in the charged cocaine conspiracy. (Pet'r's Mem. of Law at 13-14.)  These arguments are wholly without merit, and for the reasons set forth below, Neal's motion is DENIED.

No evidentiary hearing is necessary in this action. The combined submissions of the parties provide a sufficient basis upon which to deny the petition, and the Court concludes that a full testimonial evidentiary hearing would not offer any reasonable chance of altering its view on the facts as alleged by Neal, including the

details added in his petition.  See Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001) (court need not hold an evidentiary hearing where the combined submissions of the parties provide a sufficient basis to deny the petition).

I.      BACKGROUND

       A.      Indictment

        On March 31, 2008, Neal was charged in a three-count Superseding Indictment (the "Indictment").  (Indictment, ECF No. 6.)  Count One charged Neal with conspiracy to distribute, and possession with intent to distribute, five kilograms and more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  (Indictment ¶¶ 1-3.)  Count Two charged Neal with distribution, and possession with intent to distribute, less than 50 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D), and 18 U.S.C. § 2.  (Indictment ¶ 4.)  Count Three charged Neal with using, carrying, and possessing a firearm during and in relation to, and in furtherance of, a narcotics trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).  (Indictment ¶ 5.)

       B.      Trial

        Trial before a jury commenced on October 15, 2008, and ended on October 24, 2008, at which time Neal was convicted on all three Counts in the Indictment.  The trial was presided over by Judge Miriam Goldman Cedarbaum; Neal was represented at trial by Paul S. Brenner.  The evidence at trial included the testimony of law enforcement agents and two cooperating witnesses, Troy Hall and Tyco Hall (collectively, the "Hall brothers"), who participated in the charged drug conspiracy.  The Government also offered, inter alia, recorded telephone

3

conversations between Neal and the Hall brothers and physical evidence, including 4,990 grams of cocaine seized from the Hall brothers, a .357 caliber semi-automatic handgun that Neal possessed when he went to meet the Hall brothers to pick up the cocaine during a "controlled delivery," and evidence seized from Neal's apartment, including a large quantity of marijuana, ammunition, drug ledgers, and other narcotics paraphernalia.  The Government's evidence at trial established, <u>inter alia</u>, the following facts.

In or about the summer of 2007, the Hall brothers entered into an agreement with Neal—whom they met through a mutual friend and through employment in the music business—to transport cocaine from California to New York.  (Trial Tr. at 180-81, 185-86, 510-12.)  In a series of meetings in or about September 2007, Neal told the Hall brothers that he had an opportunity for them that would allow them to make up to $10,000 per month transporting "things" from Los Angeles to New York.  (Trial Tr. at 191-92.)  Tyco Hall testified that Neal had purchased a van—which was put in Troy Hall's name because he didn't have a criminal record—for the Hall brothers to use to transport drugs from California to New York, and that Neal agreed to reimburse them for costs associated with the van.  (Trial Tr. at 187-90, 197, 205, 213, 220-21, 513-15.)  Neal arranged for a secret compartment to be built into the van so that drugs could be stored in it, but the Hall brothers did not know where it was and never put anything inside the compartment.  (Trial Tr. at 99-100, 194, 513.)

In November 2007, the Hall brothers—at Neal's direction—drove the van to California to take a "trial run trip." (Trial Tr. at 195-96.) Neal paid for approximately $1,300 in expenses for the trip and spoke to Tyco Hall once or twice a day during the trip. (Trial Tr. at 197.)

In December 2007, the Hall brothers traveled to California a second time at Neal's direction, this time to bring drugs back to New York. (Trial Tr. at 204, 518-19.) During this trip, Neal again paid for expenses associated with the trip and regularly communicated with Tyco Hall by phone. (Trial Tr. at 205-06.) When they arrived in Inglewood, California, Neal directed the Hall brothers to meet an individual at a racetrack and casino who would put drugs inside the van. (Trial Tr. at 207-08, 521, 622.) Troy Hall delivered the van to a man he came to know only as "K," who took the van while the Hall brothers waited at the casino. (Trial Tr. at 521-23.) Neal called Tyco Hall about an hour and a half later to tell Tyco that the van was ready, at which time the Hall brothers retrieved the van and headed back to New York. (Trial Tr. at 524.) After experiencing delays due to some mechanical problems with the van (during which they were in contact with Neal), the Hall brothers arrived in New York in late December, at which time Tyco Hall delivered the van (which contained the drugs) to Neal. (Trial Tr. at 209, 213-14, 217, 525-26.) Neal paid Tyco Hall for the Hall brothers' work and reimbursed them for the repairs they had paid for on the return trip from California. (Trial Tr. at 218, 526.) When Tyco Hall returned the van, Neal told him that they would have to go back to

California quickly because the things they had brought back were "snacks" and "were already accounted for." (Trial Tr. at 217-18.)

Subsequently, the Hall brothers again traveled to California to pick up drugs at Neal's direction. (Trial Tr. at 218.) Neal asked Troy Hall to "step up" and inspect the cocaine personally because there had been problems with the quality of the cocaine that they had transported the first time. (Trial Tr. at 218-20, 526.) Neal told Troy Hall to make sure that the cocaine was "hard and white." (Trial Tr. at 219, 526.) Neal gave the Hall brothers expense money and a sealed bag containing what looked like a large sum of money that would be used to purchase the cocaine. (Trial Tr. at 220-22, 527, 626-28.) During the trip to California, Neal again kept in contact with Tyco Hall, and instructed the Hall brothers to go to the same racetrack and casino to meet "K." (Trial Tr. at 223-24, 528.) Troy Hall met "K" at the racetrack—this time, with two Hispanic men also present—and inspected five kilograms of cocaine, in exchange for which Troy handed the sealed bag to "K"; "K" then drove off in the van and Troy went to wait at the racetrack with Tyco. (Trial Tr. at 528-30.) Neal called Tyco a couple of hours later to say that they could pick up the van; the Hall brothers did so, and began their trip back to New York. (Trial Tr. at 224-25, 531.)

On January 9, 2008, during the Hall brothers' return trip to New York, they were stopped by a sergeant with the Utah Highway Patrol, who—with Tyco Hall's consent—searched the van and located a secret compartment under the passenger seat that contained just shy of five kilograms of cocaine, two loaded handguns, and

a quantity of marijuana.  (Trial Tr. at 97-109, 226-27, 533-34; GX 18-29, 33, 34, 36A, 36B, 36C, 37, 120.)  At trial, the Hall brothers testified that the officers showed them the firearms found in the van, which they recognized as guns that Neal had previously shown them.  (Trial Tr. at 222, 534.)  After their arrest, the Hall brothers each agreed to cooperate with law enforcement, and agreed to allow law enforcement to record telephone conversations they had with Neal (Trial Tr. at 228-29, 538-39); those recordings were offered into evidence at trial (GX 1-6, 8-15).

The Hall brothers also agreed to participate in a "controlled delivery" to Neal. On January 14, 2008, the Hall brothers arrived in New York, at which time Neal directed them to several locations, eventually leading them to a gas station in the Bronx.  (Trial Tr. at 277-78, 411-13, 568-69.)  Neal arrived at the gas station and eventually got into the van, at which time he was arrested.  (Trial Tr. at 277-79, 362-63.)  During a search of Neal's vehicle, agents found a handgun in a secret compartment in the center console.  (Trial Tr. at 364-67, 377-78; GX 39-43, 45.)  Neal subsequently consented to a search of his residence; during that search, law enforcement agents uncovered approximately six pounds of marijuana, approximately 132 rounds of ammunition, a bullet-proof vest, scales, drug records, and other drug paraphernalia, most of which was hidden in a secret compartment that was concealed in an end-table.  (Trial Tr. at 420-23, 428-33, 440-44, 453-54; GX 60, 61, 63, 71A-D, 72, 74, 74A, 74B, 75, 77-78, 80-82, 85, 200-01.)  The drug ledgers contained references to "powder," supporting the inference that they related to cocaine sales.  (Trial Tr. at 437-38.)  After his arrest, Neal made a statement in

which he admitted that the Hall brothers worked for him driving his van, he owned the handgun that was found in his vehicle and that he bought the gun from a person in the Bronx.  (Trial Tr. at 506.)

The defense case rested primarily on the theory that, to the extent that Neal had any agreement with the Hall brothers, it was to deliver marijuana, not cocaine. (Trial Tr. at 307-11, 597-98.)  The defense also challenged the credibility of the cooperating witnesses on cross-examination.  (See Trial Tr. at 293-351, 589-636.) The defense also called one witness, Neal's employer at a security firm, Craig Phillip, who testified that he instructed all of his employees, including Neal, to purchase and wear body armor.  (Trial Tr. at 550-57.)  Phillip also testified that, to his knowledge, Neal did not have a license to carry a firearm.  (Trial Tr. at 550-51, 561.)

C.   Sentencing and Direct Appeal

After an adjournment of sentencing to allow for the Court to further consider the defense's challenge to the jury's verdict with respect to Count One (see ECF No. 21), Neal's sentencing hearing occurred on May 10, 2011 before Judge Miriam Goldman Cedarbaum.  Neal appeared with new counsel, Bernard Alan Seidler, for sentencing.  (See ECF No. 26.)  Because the Court determined—in accordance with the jury's verdict—that the conspiracy involved more than five kilograms of cocaine, Neal was subject to a mandatory minimum of 10 years' imprisonment as to Count One.  In addition, because of his conviction on Count Three for violating 18 U.S.C. § 924(c)(1)(A)(i), Neal was subject to a mandatory minimum of five years' imprisonment, which was required to run consecutively with any other term of

imprisonment.  Judge Cedarbaum sentenced Neal to the mandatory minimum sentence of 180 months' imprisonment, to be followed by five years of supervised release, and ordered that Neal pay a $300 mandatory special assessment. (Judgment, ECF No. 36.)

Neal filed a notice of appeal on May 19, 2011.  (ECF No. 37.)  On October 24, 2011, Mr. Seidler moved to withdraw as counsel.  After Neal failed to respond to counsel's motion, on December 16, 2011, the Second Circuit granted Mr. Seidler's motion and directed Neal to proceed pro se.  Neal's appeal was subsequently dismissed after he failed to comply with the Court's deadline to submit a brief.

On April 25, 2012, the Second Circuit reinstated Neal's appeal, and appointed Paul Camarena to represent him.  On July 14, 2012, Mr. Camarena submitted a brief pursuant to Anders v. California, 386 U.S. 738 (1967), stating that, after a review of the record, he concluded that there were no non-frivolous issues to raise in Neal's appeal.  Mr. Camarena identified several issues that could potentially be raised in an appeal, including (1) the sufficiency of the evidence as to Counts One and Three, (2) the Court's decision to admit testimony concerning Neal's gun ownership as evidence of the cocaine conspiracy charged in Count One, and (3) the length of sentence imposed by the Court.  Mr. Camarena explained, however, that none of these issues would succeed on appeal.  On July 8, 2014, the Second Circuit granted counsel's motion to withdraw, and granted the Government's motion for summary affirmance of Neal's conviction and sentence.  (ECF No. 39.)

D.    Neal's § 2255 Motion

On September 24, 2015, Neal filed the instant motion, pro se, to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on grounds of ineffective assistance of counsel.  (ECF No. 42.)  On November 13, 2015, this action was reassigned to the undersigned.  On January 19, 2016, the Government filed its opposition to Neal's petition.  (ECF No. 46.)  After the Court granted Neal an extension of time to reply to the Government's opposition in light of logistical issues relating to his receipt of the Court's Orders and the Government's opposition, Neal submitted a reply letter on April 29, 2016.  (15-cv-7665, ECF No. 12.)

II.    LEGAL STANDARDS

A.    Bar on Raising Issues That Were Raised or Could Have Been Raised on Direct Appeal

"In general, a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal."  United States v. Thorn, 659 F.3d 227, 231 (2d Cir. 2011).  "An exception applies, however, if the defendant establishes (1) cause for the procedural default and ensuing prejudice or (2) actual innocence."  Id.  This procedural bar "does not generally apply to claims of ineffective assistance of counsel."  Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007).

B.    Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) his or her counsel's performance "fell below an objective standard of reasonableness" measured under "prevailing professional norms," and (2) he or she

was prejudiced by counsel's deficient performance such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).

As to the first prong of Strickland, attorney conduct is subject to an objective standard of reasonableness, and is accorded deference in light of the "range of legitimate decisions" that accompanies the various circumstances encountered by counsel. Id. at 688-89. As a result, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, bearing in mind that there are countless ways to provide effective assistance in any given case and that even the best criminal defense attorneys would not defend a particular client in the same way." United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (alterations and quotation marks omitted) (quoting Strickland, 466 U.S. at 689).

As to the second prong of Strickland, a petitioner must show that, but for his or her attorney's deficient performance, there is a reasonable probability that the result would have been different. Strickland, 466 U.S. at 694. More is required than a mere showing "that the errors had some conceivable effect on the outcome of the proceeding," as "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id. at 693.

III.   DISCUSSION

Neal argues that he received ineffective assistance of counsel at trial, sentencing, and in his direct appeal on several grounds. Neal contends that his

counsel's performance at trial was constitutionally deficient for failing to fully investigate certain telephone records, present evidence to the jury that he was a marijuana dealer instead of a cocaine dealer, and effectively challenge the credibility of the Hall brothers' testimony.[2]   Neal argues that his counsel's performance at sentencing was constitutionally deficient for failure to argue effectively that the conspiracy proven at trial involved less than five kilograms of cocaine.  Finally, Neal argues that his appellate counsel's performance was constitutionally deficient for failure to challenge the sufficiency of the evidence as to Count One.  As explained below, these claims are wholly without merit because Neal's counsels' performance did not fall below an objective standard of reasonableness.  Moreover, in light of the overwhelming evidence of guilt at trial, even if any of Neal's attorneys erred in their representation, Neal has not shown that any deficiency could conceivably have influenced the outcome at any stage of Neal's case.

Neal argues that he received ineffective assistance because his trial counsel failed to fully investigate records of telephone contact between the Hall brothers and the cocaine supplier and to compare those contacts with Neal's phone records.

---

[2] Neal also asserts that trial counsel was ineffective due to counsel's alleged "lymphoma" during trial (Pet'r's Mem. of Law at 10-11), an issue that Neal's counsel at sentencing also raised before Judge Cedarbaum in his sentencing submission (see ECF No. 27).  In response to that submission, Neal's trial counsel submitted an affidavit that refuted Neal's allegations of ineffective assistance.  (ECF No. 29.)  To the extent that Neal seeks to argue that trial counsel provided ineffective assistance because of an illness, he may only succeed by "point[ing] to specific errors or omissions in his courtroom behavior and conduct at trial that were a product of the attorney's illness."  United States v. Eyman, 313 F.3d 741, 743 (2d Cir. 2002) (emphasis in original).  Because, as explained below, Neal has not identified any specific errors that caused counsel's performance to fall below an objective standard of reasonableness, and there is no basis in the record to find that counsel's performance at trial was impeded in any concrete way due to his alleged illness, the Court rejects Neal's arguments.

12

(Pet'r's Mem. of Law at 6-8.)  This claim is without merit.  Although counsel has a general duty to conduct reasonable investigation, a claim of ineffective assistance based on such an argument requires that the petitioner provide evidence that undermines confidence in the jury's verdict.  <u>Castellano v. United States</u>, 795 F. Supp. 2d 272, 279 (S.D.N.Y. 2011); <u>see also</u> <u>United States v. Wilson</u>, No. 11-CR-770-2 (WFK), 2015 WL 7574471, at *5 (E.D.N.Y. Nov. 25, 2015).  The duty to reasonably investigate does not "compel counsel to investigate comprehensively every lead or possible defense or to scour the globe on the off-chance something will turn up." <u>Greiner v. Wells</u>, 417 F.3d 305, 321 (2d Cir. 2005) (citations and quotation marks omitted).  Here, Neal has not explained what exculpatory evidence may have been revealed and he provides only conclusory allegations that further investigation by counsel would have led to evidence that Neal had no telephone contact with the cocaine supplier or that the Hall brothers instead had such contact.  That is insufficient to meet his burden on this petition.  <u>Petrucelli v. United States</u>, No. 05 Civ. 9582 (TPG), 2009 U.S. Dist. LEXIS 116605, at *27 (S.D.N.Y. Dec. 15, 2009).  Moreover, even if counsel had discovered the evidence that Neal conclusorily asserts would have been uncovered, Neal has not shown any prejudice—there is no reasonable likelihood that a different outcome would have resulted in light of the overwhelming evidence offered at trial that Neal was part of the cocaine conspiracy.

Neal further argues that he received ineffective assistance on the ground that his counsel did not present a theory that Neal was only a marijuana dealer instead of a cocaine dealer and did not address certain alleged inconsistencies when cross-

examining the Hall brothers.  (Pet'r's Mem. of Law at 8-9, 11-13.)  Based on a review of the record, counsel's conduct in relation to these points were wholly reasonable under the circumstances, and thus do not constitute ineffective assistance.  First, the record reflects that counsel did attempt to pursue a theory that Neal was only a marijuana dealer instead of a cocaine dealer.  (See Trial Tr. at 307-11, 597-98.)  The record also reflects that counsel's cross-examination of the Hall brothers—and his testing of their credibility—easily met constitutional standards.  To the extent that Neal contends that there were other inconsistencies that counsel should have pursued—such as the Hall brothers' purported lack of access to the hidden compartment where the cocaine was stored—the Court notes that these are not, in fact, genuine inconsistencies at all.  Counsel's determination as to which of these issues to pursue (and in what depth) was well within the bounds of reasonable performance, and there is no ground to second-guess his decisions under the circumstances.  In short, counsel's alleged conduct clearly "fall[s] squarely within the ambit of trial strategy," which "cannot support an ineffective assistance claim" when, as here, those decisions were "reasonably made." United States v. Smith, 198 F.3d 377, 386 (2d Cir. 1999) (citing United States v. Eisen, 974 F.2d 246, 265 (2d Cir. 1992)).  Furthermore, in light of the overwhelming evidence against Neal at trial regarding his participation in the charged cocaine conspiracy and his possession of a handgun at the time of his arrest (which the Court has set forth above), Neal has failed to show that he was actually prejudiced in any way due to counsel's purported errors.

14

Neal next argues that he received ineffective assistance in relation to sentencing on the ground that counsel should have challenged the determination that the amount of cocaine involved in the conspiracy was five or more kilograms, given that the Government seized only 4,990 grams of cocaine from Neal and the Hall brothers.  (Pet'r's Mem. of Law at 10-11.)  This argument is meritless on multiple grounds.  First, counsel did in fact raise this issue by filing a post-trial motion that challenged, inter alia, the sufficiency of the evidence on Count One. (ECF No. 21.)  After receiving additional briefing from the parties, the Court denied the motion during the sentencing proceeding.  (Sentencing Tr. at 4:1-4.)  Second, the determination that the amount of cocaine involved in the conspiracy exceeded five kilograms was actually expressly made in the first instance by the jury rather than by Judge Cedarbaum (Trial Tr. at 779:11-15), and that determination was amply supported in the record based on the evidence showing that the Hall brothers had made an earlier trip to California to purchase drugs.[3]  Neal's contention that counsel failed to raise this sufficiency argument is belied by the record and, in any event, Neal has not shown that he was prejudiced by counsel's decision not to make any further argument on this point.

In addition to Neal's arguments relating to his trial and sentencing, Neal also argues that his appellate counsel's performance was constitutionally deficient because counsel failed to challenge the sufficiency of the evidence supporting his

---

[3] To the extent that Neal argues that his counsel was ineffective in failing to adequately argue the cocaine quantity issue to the jury at trial, the Court similarly rejects that claim because, in light of the overwhelming evidence presented against him, Neal has not shown that counsel could have taken any other action that could conceivably have resulted in a different verdict.

15

conviction on Count One on direct appeal, and instead filed an <u>Anders</u> brief.  (Pet'r's Mem. of Law at 13-14.)  This argument is without merit, as counsel appropriately explained in his <u>Anders</u> brief that a challenge to the sufficiency of the evidence of the quantity of cocaine involved in the conspiracy charged in Count One would be unavailing based on the evidence admitted at trial, and that a broader challenge to the sufficiency of the evidence of Neal's involvement in the cocaine conspiracy would similarly be unsuccessful.  <u>See</u> <u>Anim v. United States</u>, No. 12 Civ. 3426(KMW), 2013 WL 4056211, at *7 (S.D.N.Y. Aug. 12, 2013); <u>Jorge v. United States</u>, 818 F. Supp. 55, 57 (S.D.N.Y. 1993).  Furthermore, in granting counsel's <u>Anders</u> motion as well as the Government's motion for summary affirmance of Neal's convictions and sentence, the Second Circuit has already concluded that there were no meritorious issues for counsel to have raised on direct appeal.

IV.   CONCLUSION[4]

For the reasons set forth above, Neal's petition to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is DENIED.

The Court declines to issue a certificate of appealability because there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); <u>see</u> <u>Matthews v. United States</u>, 682 F.3d 180, 185 (2d Cir. 2012).  The Court also finds, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from the denial of this motion would not be taken in good faith.  <u>See</u> <u>Feliz v. United States</u>, Nos. 01 Civ. 5544(JFK), 00 CR. 53(JFK), 2002 WL 1964347, at *7 (S.D.N.Y. 2002).

---

[4] The Court has considered Neal's other arguments, and has concluded that they are without merit.

16

The Clerk of the Court is directed to terminate the motion at ECF No. 42 in 08-cr-0086 and to terminate the action in 15-cv-7665.

SO ORDERED.

Dated:      New York, New York
            May 23, 2016


                                    _____
                                        KATHERINE B. FORREST
                                      United States District Judge

Copy to:
Jason C. Neal
70416-054
MDC Brooklyn
P.O. Box 329002
Brooklyn, NY 11232